Case No. 225150 and 225151, Sisters for Life Inc, et al. v. Louisville-Jefferson Co, KY, et al. Argument not to exceed 15 minutes per side. Mr. Weiss, you may proceed for the appellant, followed by Mr. Mannion. Good morning, your honors. My name is Chris Weiss. I represent Sisters for Life Inc, Angela Mentor, in Kentucky, right to life. If I may, I'd like to reserve two minutes for rebuttal. Your honors, I wanted to begin this case with how this case began, which is the city's ordinance itself. There's a couple of whereas clauses that I wanted to point the court to, because it really informs what this case is about. They've got one that talks about protesters outside the EMW clinic, but more significantly, right on the second page of the ordinance, they talk about Louisville Metro conducting an investigation as to what was going on outside this clinic, and they indicate that whereas there's a memorandum about protest groups, whereas the memorandum states while local protesters could be differentiated from out-of-town protesters, the out-of-town protesters were the ones that were causing the issues. So that's how this started. It was not about what my clients were doing, which was sidewalk counseling. It was about out-of-state groups that were causing issues. And the response was to enact a fixed buffer zone that... Just help me out with why you're seizing on out-of-state, in-state, local, not local. Why does that matter? I mean... Well, your honor, it goes to the tailoring issue in this case, and the fact that there were far less restrictive alternatives that they could have pursued that they did not pursue. And their witness testified to that. In fact, their witness testified... But they couldn't ban out-of-state people or something. I mean, I'm still confused about the out-of-state, in-state. I take it you're talking more about people that were obstructionists or... Or loud or violent. Correct. That has nothing to do with in-state, out-of-state. It doesn't, but that was what their memorandum indicated their issues were. So they indicated this differentiation. And what they're really talking about, Lieutenant Stewart testified to this, they're talking about the difference between those that were blocking the clinics and the sidewalk counselors that were attempting to engage in quiet, interactive, personal speech with the people that were attempting to enter this clinic. And I think that distinction is important because the district court, first of all, largely, in fact, completely ignored the burden that this ordinance placed on our clients. In fact, suggested, notwithstanding the fact that the city's own 30B6 witness acknowledged that there was a burden, suggested that there wasn't one. And the record in this case was unrebutted about the burden of this ordinance on these sidewalk counselors. Before you move on, Mr. Weiss, there are two provisions of the ordinance. This is B1. B1 states, no person shall knowingly obstruct, detain, hinder, impede, or block another person's entry to or exit from the health care facility. Do you challenge that on appeal? We do not, Your Honor. All right. So that section of the ordinance will stay in effect? Correct. We've never challenged that section. All right. In fact, we suggest that section was all the city needed. And instead, the city went further than they needed to go. So you're just challenging B2? Correct. Now, do you acknowledge that our standard of review from the denial of a preliminary injunction, that we review for an abuse of discretion? Overall, Your Honor, yes, but not here. The real issue here is that- We do not review for an abuse of discretion? The overall injunction, in terms of all four factors, is reviewed for abuse of discretion. However, the first factor, likelihood of success, this Court has always indicated, is reviewed de novo. All right. How about the findings of fact by the district court? And the district court did make extensive findings of fact. What is our standard review for those? Your Honor, here it would be de novo. De novo? That's correct. Findings of fact? Again, there was no evidentiary hearing. She wasn't looking at witnesses. Did you request an evidentiary hearing? There was no evidentiary hearing, Your Honor. No, the question was, did you request one? I don't know that we did here. And I don't know that we- You don't know if he did or not? Well, the other way to think about it is, was there a fact dispute that would require an evidentiary hearing? Your Honor, we did not think that there was. I didn't think either side thought there was. Right. In fact, there was a 30B6- Well, I beg to differ with you on that. But the other cases I've seen that are as applied challenges for a preliminary injunction of this sort involving speech have always had an evidentiary hearing or a bench trial. I mean, McClellan, they had actually two bench trials in that case. And I thought it was odd that the plaintiffs here never requested one. Okay, evidently you think that the facts are sufficiently unrebutted that there's no fact-finding at all necessary? Well- Your Honor, if we can, let's talk about the facts because- Well, let's talk about the fact-finding. At page 18 of the district court opinion, there's this finding of fact. Plaintiffs are able to continue their sidewalk counseling at a normal conversational distance. The only thing plaintiffs are prevented from doing as a result of the buffer zone placement is physically obstructing a patient from entering the health care facility. That's a finding of fact, is it not? Your Honor, two points. There's absolutely no evidentiary support for that finding. And the reason there's not any evidentiary support for that finding, first of all- Don't we have videos for one thing? We do have some videos. Okay. Those videos demonstrate an inability to conduct the kind of interaction- Do they or do they actually show that they are interacting with the women entering the abortion clinics and they are at least attempting to give them the pamphlets? Your Honor- I mean, I saw that from the videos. And my response to that, Your Honor, I think comes right out of McClellan. It is no substitute that these folks have to raise their voices and engage in an interaction that undermines their ministry. I'm talking about fact finding. I mean, you admit that that's a factual finding. And it's clearly erroneous. Okay. All right. Now at least we're narrowing the issue. You say, okay, the judge did so fine, but that finding of fact is clearly erroneous, which is a hard standard to come by, is it not? Your Honor, first, it is clearly erroneous. And secondly, there's absolutely no support for it in the record. Again, and I'm going to point out the witness testimony here. The clients indicated, every single one of them, we can't conduct our ministry. We can't interact with these people. We used to interact and be able to have three to six interventions per month in which we were able to dissuade people because of the manner of our speech. We can't do that anymore. It's now zero. And then the city's witness- They still are able to dissuade women not to get the abortions, aren't they? I mean, they haven't been prevented totally from that, have they? I mean, they have prevented some women from having their abortions. Your Honor, historically they have not since this ordinance was enacted. They haven't had one? I think there's been one or two outside the zone, but the numbers- Okay. I thought the testimony was they had fewer. Far fewer. Successes. But they've had success. Very few. And they say it's harder to distribute the pamphlets, but they do distribute the pamphlets. Very occasionally. Okay. And it's no substitute, Your Honor. Can I interrupt the conversation? Yes, Your Honor. There's two other judges, so just to have the whole thing. But I want to direct this point in response to all three advocates so they can attend to Judge Griffin's question about whether this case is resolved by clearly erroneous fact review. In other words, that the case just determines on who the district court judge was and whether the fact findings said you could get access and another district court judge could say the opposite and suddenly the law is invalidated once, upheld the other. In McClellan, you had exactly the same statements in the district court decision. Indeed, you had it in the First Circuit decision. And not once did Chief Justice Roberts, in finding there was no narrow tailoring, find himself troubled by that. Now, why would that have been? In fact, this part of the decision is 9-0. There's not a single justice on the U.S. Supreme Court objecting to this. Why is it they wouldn't be talking about fact finding? Well, it's possible that they would have said that these things in the district court's decision in McClellan were either descriptions legally of what was happening or they were legal conclusions because what is narrow tailoring, after all, but a legal inquiry, not a fact inquiry. And, of course, that has to be the case because it would otherwise lead to a situation where the same ordinance was invalidated under one district court's fact finding for six months, upheld by another district court for the same ordinance with different fact finding. It has to be a legal conclusion that applies across the board. So I make that statement for all three of you to come to grips with this point. Is this a case about clearly erroneous review or is it a case about likelihood of success on the legal merits? Your Honor, I think it's certainly the latter. And there are primarily the legal questions here. And, in fact, this case is absolutely indistinguishable from McClellan. Is this a facial challenge or an as-applied challenge? It's both. Okay, but as-applied challenges, the results can be different as to whether the ordinance is applied unconstitutionally as to plaintiffs. One set of plaintiffs it could be sustained and another set of plaintiffs it could be applied constitutionally, right? Isn't that the essence of an as-applied challenge? I think as-applied challenges come in several different flavors. In this flavor that we're talking about, as applied to sidewalk counselors, as applied to people that are attempting to engage in intimate personal conversations, it is unconstitutional as to every single one of them. Now, if you're just a protester out there with a loudspeaker, and I'm sure you've seen the videos where that's going on, it's not going to inhibit his speech. He's reaching his audience, clearly, with his message. It's as applied to any sidewalk counselor. It's unconstitutional. And in that regard, and there's some cases out of this court, we didn't really brief them, but there's a case out of this court called Hargett that talks about how these things kind of merge. There was another case, Winter v. Bonacic, that I think Judge Sutton is familiar with, that really talks about these things can merge, sometimes in the as-applied and facial challenges when you're dealing with classes of people, which is what we're dealing with here. I thought maybe I'm just missing something in this area. Maybe it's abortion-related, which is messing me up. But I thought in First Amendment cases... It is. Facial challenges are easy. It's unlike, it's not the Salerno principle. In a First Amendment case, if the law improperly applies to this sister of life, it doesn't matter that it's constitutionally applied to someone else. That's what overbreadth is. That's true. So I don't know why we're... I realize it's possible to have an as-applied challenge, but if you have facial, you don't get worked up about a constitutional application here and an unconstitutional application there. If you have the unconstitutional application and substantial overbreadth, it's done. That's what facial invalidity is. Maybe my nomenclature was a little imprecise. Because it is unconstitutional as to every single sidewalk counselor, because it's not narrowly tailored to deal with that, it becomes an overbreadth issue, and it is a facial invalidity of the entire ordinance, if that makes sense. In other words, it sweeps broader than it needs to, because it catches these people up that aren't even the problems, as their testimony indicated, and so it is overbroad in that sense, and therefore it's facially invalid. Tell me, one thing it's hard to... So the McClellan narrow tailoring analysis is very helpful to your side, because it insists on why didn't you try an injunction? Why didn't you try criminal civil penalties? Why wouldn't a video work? And this, I guess, is your out-of-state point. But one thing it's hard for me to understand is how similar or different these two laws are. So 10-foot buffer zone versus the 35-foot, I can't really... that's hard for me to understand. Do you understand how they're... Because that's not the same thing. They're buffer zones, but they're using a different approach to a buffer zone. And so does one strike you as more speech restrictive or less? I can't quite figure it out. Your Honor, our reading of McClellan is the McClellan... The size is not the consideration. The effect on speech, in particular the type of speech, is the primary consideration, and that's one of the reasons we think the district court got it legally wrong, because there was no analysis on the effect of the speech and what it was doing to these people, which was fundamentally what McClellan was all about. It's not about the 35 feet. It's about the effect on speech. And in that regard, McClellan is absolutely indistinguishable from this case. All right. Mr. Weiss, I'm going to read from page 2537 of McClellan. And Chief Justice Roberts states, Respondents and their amici identify no other state with a law that creates fixed buffer zones around abortion clinics. That, of course, does not mean that the law is invalid. It does, however, raise concerns that the Commonwealth has too readily foregone options that could serve its interests just as well without substantially burdening the kind of speech of which petitioners wish to engage. Now, there, this is the start of the substantially burdened section of the opinion. They said that the 35-foot radius, a radius is a circle. And here we have a line, a 10-foot line, rather than a radius, right? Your Honor, it's actually a box because it's a line that extends the entire length of the sidewalk to the curve of the sidewalk, and then it's 10 feet from side to side. So I view it as a box, not just a line. Okay, but it's not a circle. Correct. And McClellan had a 35-foot circle around every entrance, every driveway, and that, in fact, encompassed the entire premises of the abortion clinic, therefore making the protesters go across the street. And across the street, they were unable to converse with the women trying to enter the abortion clinic, and they were unable to even attempt to hand them pamphlets because they were across the street. I mean, isn't that right? No, it's not, Your Honor. In fact, there was some discussion that just this here, it's substantially inhibited, but did not completely prevent, you know, what these folks were doing. They were across the street, though. Were they not? So McClellan was actually three different clinics, and I think in one of those, they were across the street, but not in all three, and they invalidated, obviously, the law in all three. That's also not why the Supreme Court found that that was truly exceptional. They found it was truly exceptional because it was a fixed rather than a floating buffer zone. And the floating buffer zone issue is Hill. That's the Hill case. That's different. The sidewalk counselor can put themselves right in the middle of that sidewalk, and if they don't move, they can interact with people as they come in. Here, it was a fixed zone, and what the Supreme Court was saying is, yeah, there may be some localities that have the same fixed buffer zone, but it's truly exceptional, the nature of this fixed zone. You're carving out an entire free speech zone. You can't go in that zone at all. You can't plant yourself in there, allow people to come to you. You can't interact with them. The same is true here. Okay. All right, thank you. Thank you, Your Honor. Oh, one other question. Your co-counsel for the other plaintiffs has, in footnote four of their brief, states, although plaintiffs pled content and viewpoint discrimination in their verified complaint for purposes of their motion for preliminary injunction, on this appeal, they rely exclusively on the claims that the ordinance is not narrowly tailored. I think that's an important concession that your co-counsel has made, since he, in effect, agrees that it's not a strong claim, the content and viewpoint discrimination claim. Do you agree with your co-counsel on that or not? We do not on this record, Your Honor. We do not. Not when the city is admitting that they're not enforcing this ordinance against clinic escorts that are engaged and prohibited, allegedly, out of scope speech within the zone, and they're flat out. It is what the Supreme Court is talking about in McCullen, where it talks about this as a matter of enforcement viewpoint discrimination. But that said, I don't think I'm arguing here today primarily that, because, again, we're on all fours with McCullen, and frankly, if we get into the free exercise clause, we're on all fours with Roberts, in terms of the exceptions that they've got and their own admission that the sidewalk counselors aren't undermining their interests. So I think we obviously have not primarily relied on that, but I'm not conceding that there's not viewpoint discrimination here from an enforcement context. So you're saying there's still an issue on the appeal, at least for your opinion? It is. Okay, thank you. Is it Mr. Mannion? Good morning, Your Honors. May it please the Court. I'm Francis J. Mannion, here for Appellants Harpring and Kenney. We think this case is relatively easy to resolve by a straightforward application. Do you think that if Louisville went back and just looked at the ordinance in Hill  that would end the case? They wouldn't have to do that? We would have to uphold that? That's an interesting question, Your Honor. Well, I mean, Judge Sykes said we would. Yes, Judge Sykes said you would. And if Louisville went back and repealed this ordinance and replaced it with literally the Hill ordinance, which is what Chicago had, this Court probably would, certainly would. Do you think we should? No, I think because I think... You don't like Hill? I think the Supreme Court has abandoned Hill. That's fairly clear. We know that they never overrule things sub salientio, except when they do. And they certainly appear to have done so in the case of Hill. But that's not what we have before us here. Then the question becomes... So obviously in this ordinance there's a whereas clause that quotes Hill. They're clearly trying to thread whatever needle it is and say, is there room for a fixed buffer zone, a non-bubble that would be consistent with McCullen? I mean, what would that look like? Could it be done? I would say no. I mean, it is interesting when you read the recitals of the ordinance that they're relying on Hill and then they enact the McCullen ordinance, in effect. Had they enacted the Hill ordinance, we probably wouldn't be here. We'd try to tee the case up for cert and have the Supreme Court go back and revisit Hill. But we don't have that here. I think what McCullen stands for is the idea that when a city or town is faced with this type of activity, particularly outside an abortion clinic, but not necessarily, obviously, it can enact a buffer zone as a last resort. That's the last thing on the list. But before they get to do that, they have to show that they have tried or seriously considered less restrictive alternatives. And Louisville hasn't really done that at all. What are the whereas clauses then before the ordinance, before the terms of the ordinance? I mean, those are the justifications, aren't they? They are. Doesn't that satisfy that they say they've tried other things? They don't say that, Your Honor. They don't? They don't. They talk about how they describe the problem. OK. You know, raucous, boisterous, sometimes violent, harassing protesters who are not sidewalk counselors. That's the crucial distinction that McCullen makes. They have a problem with those kinds of protesters. And McCullen tells them how to deal with those kinds of protesters while protecting the free speech rights of sidewalk counselors. It's true that McCullen's 35-foot buffer zone is more restrictive than Louisville's 10-foot buffer zone. But that's not the crucial point. What McCullen says is when government makes it more difficult, that's the standard, more difficult to engage in one-on-one communication and handing leaflets, then the government must demonstrate that it is narrowly tailored to only restrict as much speech as necessary to advance its interests. And that's not what Louisville has done here. Louisville has excluded categorically everyone, including peaceful sidewalk counselors who simply want to walk up to someone, speak to them quietly. And the essence of sidewalk counseling is this sort of quiet, personal, friendly conversation. You can't do that from even 10 feet away. I mean, 10 feet away is approximately council table here. We're 12 feet away. We're 12 feet away. We're conversing very freely. We are, Your Honor. But I'm not talking to you about your personal, medical, social, financial problems. And I don't think anyone would expect us to have that type of conversation from this distance. If I want to say to you, abortion is bad or abortion is good, I certainly can do that from this distance. I can hold up a sign. I can wave a pamphlet at you. But I can't hand you a pamphlet. And you're not inclined, probably, to come over and get from a perfect stranger this piece of paper that he's waving at me. That's the crucial distinction McCullen made. McCullen says that type of communication, sidewalk counseling, which it uses the term that our clients use, sidewalk counseling, enjoys the highest level of protection that the First Amendment affords. And that's why the city cannot exclude sidewalk counselors from the area where they're most effective. On this record, my client Edward Harpring and Mary Kenny talk about how they're most effective in front of the door, where they'd be allowed to be, under Hill, actually. But they're not under this case. Or... I have a question. Yes, sir. If Hill and McCullen don't exist, but you have the Hill approach floating, the McCullen approach, which one is more speech restrictive? I think that the McCullen one is far more speech restrictive because in Hill, with consent, there's no restriction. As long as the audience gives consent, somehow indicates consent, the Hill counselor or speaker can walk right next to that person, can stand in front of the door, can stand in this box that Louisville has created. And as long as they're peaceful, and as long as they're not blocking the door or obstructing entry or egress, the First Amendment prohibits the city from forbidding that. Unless there were a strong record here, which there's not, of they've tried, they've enacted new legislation which doesn't restrict... Why don't you respond to Judge Griffin's earlier point to your co-counsel about are there fact findings here that require clearly erroneous review? Well, I think that the crucial fact finding which Judge Griffin read, actually, about the only thing they're prohibited from doing is blocking entry, that's clearly erroneous. I mean, on the face of it, 10 feet wide certainly restricts much more than simply blocking a doorway. So that's clearly erroneous, but I kind of think it's a mixed question of law and fact because I don't think the court, in making that statement, and of course the legal findings are reviewed de novo, understood what McCullen talks about. McCullen says anything that makes it more difficult to engage in one-on-one communication and leafleting is problematic under the First Amendment and requires, to enact that, would require narrow tailoring. Louisville does have a narrowly tailored measure to address the blocking and inhibiting and it's part of this ordinance. It's the part that neither one of us have challenged. They have to show that they've tried to enforce that and failed. They've tried to enact something like the federal face law and failed. Remember, face... How is the face law different from the first section, the unchallenged section? Is it because it has criminal penalties? It has criminal penalties and allows for civil relief, injunctive relief. The unchallenged section doesn't allow that? Not specifically, Your Honor. So it's a remedy point. It's a remedy point. Federal law does. Yeah. Otherwise they're similar. They are similar. But Louisville has made no showing, there's no showing in the recitals that they tried to do that. What they say is exactly what Massachusetts said to McCullen. This would make our job easier. And the Supreme Court's, maybe the central finding or holding of McCullen is, of course it would when Massachusetts said this would make our job easier. A painted line on the sidewalk is easy to enforce, but the prime objective of the First Amendment is not efficiency. Louisville here sacrificed speech for efficiency. And under McCullen, that simply cannot stand. So you also independently, I mean Judge Griffin asked your co-counsel, is it actually content neutral given this statement that they wouldn't enforce it against either employees, escorts, friends of the patient? I hate to differ with my co-counsel, but we think under McCullen, McCullen addresses that. And McCullen found an almost identical statute to be content neutral. But that's the situation where you could have an as-applied failing. Yes, well that's true. You decided to not enforce. Yeah, if there were the facts here for an as-applied challenge on that, we could certainly bring that. But we don't have that at this point. What about the deposition of the police chief or whatever who basically said he wasn't going to enforce it against those people? That's undisputed. It is undisputed, and it's obviously an arguable point. It's not one that we've made because we think the case is so easily resolved under McCullen, narrow tailoring, that we didn't think it was necessary to go there. It doesn't mean we want it in the future. And just to make sure I'm getting, I think both of you have helpfully acknowledged that there's a difference between the 35 radius and the 10 foot. And I take it that doesn't, your point about why that doesn't trouble you is you just look at that section of McCullen and say it has nothing to do with whether it's 30 feet, 20 feet, 5 feet. It's just, it's a speech restriction. And unless you show you've tried these other things, we're not going to bother to even take seriously the idea of upholding it. It just doesn't matter. Exactly. And you have to understand that in McCullen, factually, there's lots of reference in the opinions to the fact that Mrs. McCullen was still able to sidewalk counsel people outside the zone, successfully so. I think the number 80, that she had 80 successful interactions with patients while the 35 foot buffer zone was in effect. But that didn't stop the Supreme Court from concluding that it still made it more difficult for her to have these sort of personal one-on-one communications. In fact, and I know I'm past my time here, if the Court would indulge me, one more important fact is when you look at Mary Kenny's testimony about a specific instance in our brief where she was walking with a woman, a patient of EMW, and came to the white line and had to stop. And the patient kept walking and appeared to be confused by that. In McCullen, the Supreme Court references something almost identical to that that happened to Mrs. McCullen. And that, it's at 573 U.S. at 487, that Mrs. McCullen says, I come to the line and I have to stop and people look at me with suspicion. And even having to stand on the other side of a white line puts these peaceful sidewalk counselors in a suspicious light. If you're the person coming to the place  won't cross that white line, it makes you suspicious. Why does the law not want me to talk to this person? That's a burden. That makes it more difficult to do what these people set out to do and which the Supreme Court said is protected. Okay, thank you. We'll hear from the other side. May it please the Court. Good morning, Your Honors. My name is Natalie Johnson and I'm with my co-counsel John Carroll and we represent the athletes in this case, Louisville Metro Government. Mayor Greg Fischer, Chief Erica Shields, and Mike O'Connell. And we're here to ask that this Court affirm the District Court's denial of the appellant's motions for preliminary injunction. I do want to talk about the District Court's findings of facts. I think that's very important to the narrow tailoring analysis framework. The District Court here is in the best position to determine these facts. They're familiar with this location. They are familiar with the setup of where this healthcare facility is located and how the buffer zone looks and what surrounds that area. And here the District Court found that the ordinance at issue allows a healthcare facility that's experiencing access issues request a buffer zone. Once that request is made, then the Department for Public Works goes to that healthcare facility and they paint demarcation lines right outside of that healthcare facility's entrance. And those demarcation lines extend five feet from the entrance on both sides and then perpendicularly run to the curb. And so you have, this is one of the smallest buffer zones that courts have analyzed. So what is the, is it 10 by 10 basically? Is it 100 square feet? Is that what it is? I would say about that. I'm not sure what the exact distance is from the entrance to the sidewalk curb. I don't mean to ask you a geometry question. I'm just curious what the, if it's five on each side and then it goes out 10 or something, is it? I would say it's about 10 by 10. And your honors, this is one of the smallest buffer zones. It's also located directly in front of a healthcare facility entrance. And so for these two reasons, this buffer zone doesn't create the problems that you see in other cases. For instance, the court found that sidewalk counselors, if they're standing right at that demarcation line and there's a patient walking through the buffer zone, they're essentially five feet away, if not less, from that patient. But the findings of fact here, it's basically just the depots and the pictures and the videos? Yes, your honor. There wasn't a hearing obviously as we've kind of gone over, but it's just... I would also say the language of the ordinance is a finding of fact because there was dispute on ordinance interpretation. There's no credibility determination or... I mean, you're just looking at the paper. I've got the paper here. I mean, that's the record here, I guess, right? Sure, your honor. But we also have the videos. Did you submit the videos? Yes, your honor. So the entire... Well, there was an entire record at the Metro Council level when this ordinance was being discussed. And that includes videos, pictures, testimony, memorandum, and all of that was incorporated into the ordinance. So these videos are pre-ordinance videos as opposed to post-ordinance? I believe they're pre and post. I believe... Which ones are pre and which ones are post? Because I reviewed them and I had trouble telling if it was pre or post. Sure. I believe that the epilese introduced the entire record that was pre the ordinance going into effect. And then there were videos and pictures. I believe that the appellant submitted post the buffer zone being demarcated. So they submitted videos as well? I believe so, your honor. Okay. Do you know the numbers of the videos? Like videos 12 through 15 were... I don't even see an indication of who submitted what. I could not answer that question right now, your honor. I apologize. Okay, because it's somewhat important if the videos depict the situation after the ordinance or before the ordinance. I mean, my recollection of the videos is it shows that the counselors are able to engage the people, are able to give them the pamphlets. But if that's all pre-ordinance, it has nothing to do with whether the ordinance itself has restricted that activity. So it's kind of... It might go to the need or the necessity, I guess, of the ordinance, but it doesn't really show the effect of it. Sure. I do believe there is tangible evidence that shows post-ordinance that patients walking through the buffer zone are able to reach out and grab literature that the sidewalk counselors are handing out. To me, I think these are factual issues as to how the ordinance affects the sidewalk counselors doing their job. And because I think that there are factual issues here, shouldn't we remand it for an evidentiary hearing for the judge to actually hear testimony, to make credibility determinations, to make findings of fact that, yes, they have been prevented and no... I mean, as opposed to doing it on the basis of just some evidence that was submitted by each side. Sure. Would it be more prudent to have an evidentiary hearing? It would probably be more prudent, Your Honor, and I would defer the remand question to the court because the appellees would be okay with the status quo. I do think that the record, though... I think that the language of the ordinance and what has been submitted on the record is enough to show, however, that the plaintiff's speech is not substantially burdened. And I think, you know, the district court, their fact-finding shows that, too. I mean, we're talking about... On this point, I'm looking at this sentence, I guess it's 284, page 17 in mind, but based on the Department of Public Works placement of the deprecation lines, I mean, it's basically saying, given that it's 10 feet, that's what it's saying, plaintiffs are still able to engage in sidewalk counseling, you know, not explained anymore outside of EMW due to large stretches of sidewalk that remain outside the buffer zone's boundaries. Do you take that to be saying a fact-finding that there's no speech suppression? So, in other words, it's just... We're just finding this is not a free speech case anymore. The buffer zone is so small, there's no material restriction on speech. Is that what you take it to be saying? I think that those statements, in conjunction with the fact that the court found that because the buffer zone was so small and directly in front of the entrance, that essentially all it prevented the plaintiffs from doing was obstructing access, then yes. I think all of those facts together... That seems quite implausible to me, to say that this means there's no speech restriction when it comes to compassionate counseling or handing a leaflet as opposed to waving a leaflet. I mean, if it's ten feet, it's very easy... It really can be nine feet, right? The person can walk the other side of the line. That's starting to get pretty far away from them, both from the perspective of a leaflet or compassionate speech. So I find that quite implausible, just to let you know. I don't care whether you want to call it clearly erroneous or whatever, but that just gets into laughability territory. So then that leaves the other way to look at the fact-finding, and this strikes me as much more likely, that the point the judge is making is, hey, it's not that bad. It's not as bad as McCullen. It's not as bad as some others. And that strikes me as a forceful point. That's why I was thinking about 35 feet versus 10 feet. But then what I think makes your case very hard is McCullen just doesn't care. There's a trigger for McCullen. The trigger is, are you restricting this kind of compassionate speech as distinguished from protesters? And if that's it, it doesn't matter whether 10, 35, 40, 6 feet. If you're doing that, you now have this obligation which McCullen makes quite difficult to show these other things. So that's why I think you run into trouble. So I guess the first theory gets you out of McCullen because you'd say this finding shows there's no restriction at all, but I just don't know how you could plausibly say that on this record. You could say it's less, it's not as significant as others, there's these other approaches, but then I don't understand how you get out of the McCullen very rigorous narrow tailoring. And that's fair, Your Honor. I do believe that the standard is substantially, does it substantially burden their speech. And I think that this... Yes, it does not substantially burden their speech. And I think this ordinance is significantly different than the statute that was in McCullen, at issue in McCullen. And I think the court, you can't take the statute in McCullen out of the context that it was 35, it required, it prohibited individuals from standing on sidewalks and public ways within 35 feet of any health care facility entrance and driveway. Okay, so let's... I'll think some more about maybe the entry is substantial burden and maybe this finding and the law allow you to make that argument which I agree is a winner, because you're outside. But let's say we decide it is a substantial... McCullen's in play. Then 35 feet versus 10 feet had nothing to do with the rest of what Chief Justice Roberts said. Aren't I right about that? There's nothing after that that makes any difference whether it's 5 feet, 10 feet, 20 feet, 30 feet, 50 feet. It's you're restricting speech and you need to show you tried other means. Well, I'm not sure that I would agree with that analysis, Your Honor. I think that in McCullen, the only reason that the court required the government to show they tried less restrictive means is because the statute was not narrowly tailored and it burdened the plaintiff's substantial speech. I mean, the court clearly says that just because the statute is not narrowly tailored, it isn't necessarily invalidated. And then they go on to say, but it raises serious concerns about the government's attempts at these less restrictive means. And I think the circuit courts have interpreted McCullen in that way going forward. I mean, even this court in H.L. Lexington Services versus the Lexington-Fayette-Urban County government interpreted McCullen that way and found that if a statute is not overly broad and narrowly tailored, then you don't need to do that second analysis of whether the government attempted less restrictive means. And that's what the district court did here. And it referred to McCullen and it referred to the H.L. Lexington Services case. And finding that because the ordinance was narrowly tailored and it did not substantially burden the sidewalk counselor's speech, then Louisville Metro was not required to do that additional step at showing that they attempted less restrictive means. Is substantially burdened speech, is that a legal issue or a factual issue? I think it's both. I think you have to apply the narrow tailoring framework to the facts. And in this case, the buffer zone, it's just significantly different than the buffer zone in H.L. and McCullen. I mean, in H.L., the statute prohibited knowingly approaching a person within 100 feet of a healthcare facility. And then you could only approach them within 8 feet. So in H.L., you have these problems of who is a patient, who's not a patient, because you can't tell that within 100 feet. And then once you can tell if it's a patient, the sidewalk counselor can then only approach them within 8 feet. And in that case, the Supreme Court upheld that statute as narrowly tailored. And I think I would argue that that buffer zone substantially burdens more speech than the one here. You keep using the word substantially burden, but McCullen actually uses the phrase burden more substantially than necessary to fulfill the interests of the ordinance. So McCullen doesn't say that it must be a substantial burden, but it may not burden more than necessary. So the substantial is about the more, is it not, rather than the burden? And even if we did interpret... Isn't that the way, I mean... I think even interpreting that way, the district court would still be correct in finding that the ordinance doesn't burden more speech than necessary. Okay, but if you burden the speech, then the government has to come forward with their proof that it's no more than necessary. And, I mean, once there's a burden here, in your argument, there's no burden at all, right? I think there's... Any time you have a time, place, manner restriction, there is some degree of burden on speech. So that gets you into narrow tailoring. Correct. And this ordinance is narrowly tailored. Then you say if you establish that it's narrowly tailored, you don't have to do the alternative means analysis, correct? I would make that argument, yes, your honor. That confuses me a little bit, because I don't know. How do you figure out whether it's narrowly tailored or not if you're not looking at some of the other things that would be alternative? Including the ones mentioned in McClellan. Sure, I think that you can... Again, this goes back... Which ones can we skip over that are in McClellan? So McClellan talks about using an injunction. So we have videos, we have knowledge of out-of-state protesters, people that are violent, obstructive. You have videos. Why doesn't that set up the injunction? You don't have to have 24-hour surveillance. You see the video, you realize it's so-and-so. Injunction issued, narrowly tailored. That problem is gone. So McClellan says that it's an accident thing. Should we consider that here, or is there some reason we don't consider that in this case? Well, I would argue that McClellan only considered those, again, only considered those less restrictive means because the ordinance was clearly not narrowly tailored. It was not doing least restrictive means. You keep saying that. It's narrow tailoring. They're assuming it's content-neutral. Narrow tailoring. As you're arguing here, why don't we have to ask that question here? Tell me why it is we don't ask the question of the injunction, or do we ask it? My understanding is that you don't need to ask it. Why? Because the ordinance on its face does not burden more speech than necessary to achieve the government's interest in safe access to health care facilities. We're just going to catch our tails going around in circles with how you're saying this. I guess I'm confused because my understanding of McClellan and the circuit cases that have interpreted McClellan, and even going back to Ward, the rock versus racism, which McClellan cites in its narrow tailoring analysis, you do not need to consider any other government attempt, whether or not they tried injunctions, whether or not they tried arrest. If the ordinance or statute is narrowly tailored and it does not substantially burden speech, you do not need to go to step two of whether they attempted anything else. Let's say there's another way of thinking about it. Let's just say the way of thinking about it is that McClellan says part of the narrow tailoring inquiry is to figure out... We all agree you don't start with suppressing speech. It's this kind of common sense notion. Forget the doctrine. They're just saying before you suppress speech, try something else. And so that's what McClellan says. Why didn't you try the injunctions? And I'm asking, don't we have to ask that here? Your Honor, even if you do ask that, I think Metro government did attempt other means. They tried injunctions against... Does the record show they tried injunctions against anything? There was not injunctions, no, but there were arrests for a variety of different crimes. There are no contact orders in place currently. If you can do arrests, why not do injunctions? That just solves problems. Mr. Smith can't do this anymore or Mr. Smith's going to have a very long prison sentence. They just weren't very successful. These other means that were attempted, such as injunctions and arrests, they're just not as successful. Did they have access to the videotape back then? Yes, but the reason that doesn't work is because these crimes that... These are misdemeanors, so these statutes that prohibit harassing, assault, stalking. Well, that's their point. Take the federal statute and give criminal penalties, civil... I would almost argue that's more burdensome. What's that? I would almost argue that that's more burdensome than what Louisville Metro did. I mean, we're still talking about a very small... I mean, this is a very small square right in front of the doorway to a healthcare facility. If someone is walking through that buffer zone, they are either entering or exiting that facility. And I just think that, you know, putting injunctions in place, I would think is almost more burdensome than what Louisville Metro has actually done. But it's not because it's tailored to the bad actor. If there's someone who's borderline obstructing, very loud, all of these other problems, you target that person and prohibit that person from getting within city limits or 1,000 feet of it. That's very legit. And there have been no contact orders put into place against certain individuals. Just one other thing on the viewpoint. What do we make of the deposition testimony that the ordinance wouldn't be enforced against escorts, employees, friends of patients? That seems problematic. Sure, and I do think that if someone were to file a complaint against an escort who was acting outside of the scope of their duty, that would be enforced, Your Honor. All we have is this deposition testimony. Sure, and I can't remember the context of how that question was asked, but I'm not sure. I don't think that it would not be enforced against someone who was acting outside of the scope of their duty. However, I do think that... That's the Noblesse Oblige line. Well, I will say, too, though, in McClellan, the court said that even if there were individuals acting outside of the scope of their duty, that would really speak to unequal enforcement, and it didn't invalidate the ordinance on its face. Okay, other questions? My time is up. Is there anything else you wanted to say? I know we've kept you up there, but we also let them go on. Just the last thing, the district court, they are in the best position to find the facts of this case. It was not an abuse of its discretion. The narrowly tailored framework applied to those facts, I think, in Hill and McClellan, support the court's decision. Why wasn't there a request for an evidentiary hearing? It's routine as to requests for preliminary injunctions. In fact, I don't know of another case where I have not had an evidentiary hearing before a preliminary injunction has been ruled on. Why wasn't there a request by you or by somebody? Sure, and, you know, Honor, I don't know why I did not personally ask for an evidentiary hearing. This case was just, it was moving very quickly, and, you know, we did have depositions that were all part of the record, and there was a large record that was submitted to the district court. The police officer's testimony, I mean, there's disputes as to what he's admitted, what he hasn't, whether he's speculating as to potential prosecutions in the future and this and that, whether it's admissible evidence, this and that. I mean, all that stuff could be weeded out at an evidentiary hearing, and here the judge made no reference to the police officer's deposition. He didn't appear to consider it. All right, anyway, you answer my question. You don't really know why we don't have one, but... Thanks so much. This is an honor. Thank you. Thank you. Okay, it looks like you each have brief rebuttals. Yes, Your Honor, very, very briefly, and I did just want to address just some of the questions. Judge Griffin, you asked about the videos. There were videos that they submitted, and then there were videos that we submitted that were exhibits to the police officer's deposition that were post-ordinance. Okay, are they labeled? I mean, so if I look at video number 15, what is that? Which ones are post and which ones are pre? Your Honor, if it's the exhibits to the video, if it's the exhibits to his deposition that were conventionally filed at, for instance, docket entry 48, it was authenticated at docket entry 49, and it was exhibits 12, 13, 14, 15, 16, 17, 18, 19, those were post. Okay. And that's what we reviewed with him. I did want to, Your Honor, if I can, talk about just briefly, we didn't request an evidentiary hearing because we didn't think that there was a factual issue to resolve in this case. And particularly in light of the 30B6 deposition testimony, and that was a 30B6 deposition testimony, that binds the defendant, the admissions that the lieutenant made in this case. Well, I mean, what if the questions were improper? I mean, they asked the witness to speculate, and he gives an opinion as to speculation. I mean, that's not admissible. He really can't use that, can you, because it's an improper question. Your Honor, if it's not objected to, sure he can. You have to object to, I guess you do have to object to the form of the question. Don't you, at the deposition? You do. And there was no objection as to the form? Correct. Was that one of the 30B6 topics that you listed? It was, what, enforcement of the possible enforcement or something like that? It was how they enforced it, the interpretation of the ordinance, past enforcement, what led to it. I mean, there was a list of topics in the notice that was filed for this witness. I think it was actually Exhibit 1 in that deposition was, what are we going to talk about? And there was a list of them, and it did include all those things. He was the only one they designated. He was. All the topics. Yes, Your Honor. So he bound the city. And the admissions that he made, by the way, and I know that the court was talking about the least restrictive, or less restrictive measures, not substantially burdening more speech than is necessary, and that's right out of McCullen, and that flows from Ward. You have to consider the other alternatives, and I'm going to talk about, if I can, just to conclude, the admissions he made and why we should prevail based on McCullen. He admitted, in part, Your Honor, that they engaged in prosecutions, and those were fully effective. He admitted, in part, that they could have done injunctions, and they didn't. He admitted, in part, I mean, there's an entire colloquy that we engage in, and I know that we briefed it thoroughly. He indicated that these particular defendants weren't the problem. He indicated they could have done video and targeted prosecutions, and they've done that in the past, and that was effective. And at the end, he made the concession, hey, look, all this other stuff works. It's just not as easy, and McCullen deals with that, too, because convenience is not the hallmark of what the First Amendment's about. So I think in light of that 30B6 deposition, Your Honor, and in light of McCullen, they cannot prevail in this case, and the district court egregiously erred by failing to enjoin this ordinance. Thank you. Thank you, Your Honor. Thank you, Your Honors. Very briefly, I did just want to emphasize, and I think, Judge Griffin, you corrected counsel on this. The standard is not a substantial burden on speech. It's anything that makes this kind of speech more difficult. That's the language that McCullen uses. Substantially more difficult. It's a burden that's substantially... A burden substantially more speech than necessary to achieve the government's... I first thought that the standard was substantial burden on speech, but that is not the standard. The standard is just a burden on speech. Exactly. Then we have to decide whether that burden is more than necessary. Exactly. Or substantially more than necessary. Exactly. And I think the district court made that error and assumed that it was looking for a substantial burden on speech, which, as we've discussed, it was not. I do want to point out one aspect of the ordinance that hasn't been discussed. It's not simply that the societal counselors can't be in the buffer zone. If you read the language of the ordinance, they can't cross the buffer zone. So that if a patient, a prospective patient, is coming from the west of the building and the sidewalk counselor is on the east of the buffer zone, that sidewalk counselor can't do what a normal person would do, which is simply walk to meet the person. They have to go out into the street to get around the buffer zone, which going out into the street is illegal in Kentucky. But that also adds to the burden. So it's not as the district court described, I think. Everyone's coming through the middle of the buffer zone and if you stand at the edge of the buffer zone, you're only five feet away. That happens sometimes, but it doesn't happen all of the time. And so it does become more difficult if you're going to comply with the ordinance's terms to exercise the type of communication that McCollin says is protected. That's all I have. Okay, thanks to all three of you for your helpful briefs and arguments. Thanks for answering our questions, which we always appreciate. So thanks to all of you, and the case will be submitted.